# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEONARD DEWAYNE SMITH,<br>               Plaintiff,<br>v.<br>NANCY A. BERRYHILL,[1] Acting<br>Commissioner of Social Security,<br>               Defendant. | NO. EDCV 16-2298-KS<br><br>REPORT AND RECOMMENDATION OF<br>UNITED STATES MAGISTRATE JUDGE |

## INTRODUCTION

Plaintiff filed a Complaint on November 3, 2016, seeking review of the denial of his applications for a period of disability and disability insurance benefits ("DIB"). (Dkt. No. 1.) On December 2, 2016, the parties consented, pursuant to 28 U.S.C. § 636(c), to proceed before the undersigned United States Magistrate Judge. (Dkt. Nos. 11, 12, 13.) On July 19, 2017, the parties filed a Joint Stipulation ("Joint Stip.") (Dkt. No. 23) in which plaintiff seeks an order reversing the Commissioner's decision and either ordering the payment of

---

[1] The Court notes that Nancy A. Berryhill is now the Acting Commissioner of the Social Security Administration. Accordingly, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the Court orders that the caption be amended to substitute Nancy A. Berryhill for Carolyn Colvin as the defendant in this action.

1

benefits or remanding the matter for further administrative proceedings (Joint Stip. at 15). The Commissioner requests that the ALJ's decision be affirmed or remanded for further proceedings. (*See id.* at 15-16.) The Court has taken the matter under submission without oral argument.

## SUMMARY OF ADMINISTRATIVE PROCEEDINGS

On August 26, 2014, Plaintiff, who was born on February 1, 1966, filed an application for DIB.[2] (*See* Joint Stip. at 2; Administrative Record ("AR") 18, 100, 173.) Plaintiff alleged disability commencing June 1, 2014, due to: PTSD; depression; irritable bowel syndrome; anxiety; tinnitus; mood swings; arthritis; and lumas spine. (AR 173, 189.) Plaintiff previously worked in the following occupations: security guard (DOT 372.667-034); and department manager (DOT 299.137-010). (AR 28, 191) The Commissioner denied Plaintiff's application initially and on reconsideration. (AR 100, 123.) On February 24, 2015, Plaintiff requested a hearing. (AR 128-29.) On May 24, 2016, Administrative Law Judge Lynn Ginsburg ("ALJ") held a hearing. (AR 54.) Plaintiff, who was represented by counsel, and Sonia Peterson, the vocational expert ("VE"), testified at the hearing. (AR 54-.) On July 27, 2016, the ALJ issued an unfavorable decision, denying Plaintiff's application for DIB. (AR 18-29.) On October 12, 2016, the Appeals Council denied Plaintiff's request for review. (AR 1-4.)

## SUMMARY OF ADMINISTRATIVE DECISION

The ALJ found that Plaintiff met the insured status requirements of the Social Security Act through September 30, 2017 and had not engaged in substantial gainful activity after the alleged onset date of June 1, 2014. (AR 20.) The ALJ further found that Plaintiff had the

---

[2] Plaintiff was 48 years old on the alleged onset date and thus met the agency's definition of a younger individual. *See* 20 C.F.R. § 404.1563(c).

2

following severe impairments: hypertension; diabetes mellitus; post-traumatic stress disorder; depression; and chronic back pain. (AR 20.) The ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any impairments listed in 20 C.F.R. part 404, subpart P, appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526). (*Id.* 21.) The ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform light work as follows:

> Lift and carry 40 pounds occasionally and 20 pounds frequently; can sit, stand, and walk for 6 hours in an 8 hour workday with normal breaks and no limitations on sitting; can never climb ladders, ropes, or scaffolds but can frequently climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; can have only occasional exposure to unprotected heights; can perform unskilled work at all reasoning levels appropriate for unskilled work and can have only occasional superficial interaction with the public.

(AR 22.)

The ALJ determined that Plaintiff was unable to perform his past relevant work as a security guard and department manager. (AR 28.) However, the ALJ concluded that, given Plaintiff's age, education, work experience, and RFC, there were other jobs that exist in significant numbers in the national economy that Plaintiff could perform, including the representative occupations of cleaner (DOT 323.687-014), mail room clerk (DOT 209.687-026), and photocopying machine operator (DOT 207.685-014). (AR 29.) Accordingly, the ALJ determined that Plaintiff had not been under a disability, as defined in the Social Security Act, from the alleged onset through the date of the ALJ's decision. (*Id.* 28.)

\\
\\
\\

3

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence in the record as a whole. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 522-23 (9th Cir. 2014) (internal citations omitted). "Even when the evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012).

Although this Court cannot substitute its discretion for the Commissioner's, the Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (internal quotation marks and citation omitted); *Desrosiers v. Sec'y of Health and Hum. Servs.*, 846 F.2d 573, 576 (9th Cir. 1988). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). However, the Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." *Orn*, 495 F.3d at 630; *see also Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003). The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists if the error is "'inconsequential to the ultimate nondisability determination,' or if despite the legal error,

'the agency's path may reasonably be discerned.'" *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (internal citations omitted).

## DISCUSSION

Plaintiff alleges the following errors: (1) the ALJ did not properly consider the examining psychiatrist's opinion; and (2) the ALJ did not properly consider the treating psychiatrist's opinion. (Joint Stip. at 3.)

### I. <u>Applicable Law</u>

"The ALJ is responsible for translating and incorporating clinical findings into a succinct RFC." *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015). In doing so, the ALJ must articulate a "substantive basis" for rejecting a medical opinion or crediting one medical opinion over another. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014); *see also Marsh v. Colvin*, 792 F.3d 1170, 1172-73 (9th Cir. 2015) ("an ALJ cannot in its decision totally ignore a treating doctor and his or her notes, without even mentioning them"). Generally, the medical opinion of a claimant's treating physician is given "controlling weight" so long as it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." 20 C.F.R. § 404.1527(c)(2); *Trevizo v. Berryhill*, 862 F.3d 987, 997 (9th Cir. 2017). When a treating physician's opinion is not controlling, it is weighted according to factors such as the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability, consistency with the record, and specialization of the physician. 20 C.F.R. § 404.1527(c)(2)-(6); *Trevizo*, 862 F.3d at 997. These same factors guide the ALJ's evaluation of the opinions of other medical sources. 20 C.F.R. § 404.1527(e)(2)(ii).

Ultimately, "[t]o reject the uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence." *Trevizo*, 862 F.3d at 997 (internal quotation marks and citation omitted); *Ghanim v. Colvin*, 763 F.3d 1154, 1160-61 (9th Cir. 2014). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Trevizo*, 862 F.3d at 997. "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* (quoting *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).

## II. ALJ's Assessment of the Examining Psychiatrist's Opinion

### A. The Opinion of Dr. Reynaldo Abejuela

Plaintiff contends that the ALJ erred in her evaluation of the opinion of Reynaldo Abejuela, M.D., diplomate of the American Board of Psychiatry and Neurology, who examined Plaintiff in connection with his claim for benefits on October 20, 2014. (Joint Stip. 3-6; *see also* AR 401-07.)

Plaintiff reported to Dr. Abejuela that he has a history of Post-Traumatic Stress Disorder (PTSD) dating back to his return from Desert Storm in 1991 (AR 401), and Dr. Abejuela noted that other subjective symptoms include depression and anxiety AR 402). Dr. Abejuela described Plaintiff as "emotionally unstable, easily distracted, and unable to focus during the interview." (AR 403.) His eye contact was "poor" and he exhibited "psychomotor retardation with slowness of movement." (AR 403.) Dr. Abejuela described Plaintiff's affective status as "depressed and anxious," "apathetic and withdrawn." (AR 404.) Dr. Abejuela described Plaintiff's impulse control as "poor" and his insight as "inadequate." (AR 404.) Dr. Abejuela noted that Plaintiff's attention span and

concentration was "decreased" and Plaintiff struggled with serial 3s. (AR 404.) Plaintiff had no response when asked for the date. (AR 404.) Plaintiff exhibited impairments of both his short-term and long-term memory. (AR 404.) Plaintiff could recall only one of three items at three and five minutes. (AR 404.) When asked how we celebrate the 4th of July, Plaintiff answered, "I don't know." (AR 404.) Dr. Abejuela diagnosed Plaintiff with chronic PTSD. (AR 405.)

Dr. Abejuela assessed the following limitations. Plaintiff is moderately impaired in his ability to: perform daily activities; maintain social functioning; and understand, carry out, and remember simple instructions. (AR 406.) Plaintiff is moderately to severely impaired in the areas of: concentration, persistence, and pace; and occupational and social functioning. (AR 406-07.) Plaintiff is severely impaired in his ability to: understand, carry out, and remember complex instructions; respond to coworkers, supervisors, and the public; respond appropriately to usual work situations; and deal with changes in a routine work setting. (AR 406.) Dr. Abejuela also assessed Plaintiff as severely impaired in the area of episodes of emotional deterioration, stating that "there are repeated episodes of emotional deterioration in work-like situations." (AR 406.) Dr. Abejuela stated that Plaintiff's psychiatric prognosis is "fair to guarded." (AR 407.)

**B. Discussion**

The ALJ assigned little weight to Dr. Abejuela's opinion because: (1) it was based on a one-time examination with the opportunity to review only a limited amount of the other medical evidence in record; (2) the treating source records reflect far less restrictive limitations and indicate that Plaintiff has been stable on medications for years; and (3) Plaintiff's function report reflects far fewer functional restrictions. (AR 25.) The Court considers each of these justifications in turn to determine whether they are specific and

legitimate reasons supported by substantial evidence for discounting Dr. Abejuela's opinions.

### 1. One-Time Examination and Limited Review of the Record

The ALJ's first reason for discounting Dr. Abejuela's opinion is specific but not legitimate. As a consulting examining physician, Dr. Abejuela's job was to examine Plaintiff once in connection with his claim for benefits. An examining physician's opinion is generally entitled to less weight than a treating physician's opinion because the treating physician had more contact with Plaintiff and, thus, has a "longitudinal picture" of the Plaintiff's impairments, symptoms, and limitations. *See* 20 C.F.R. § 404.1527(c)(2); *see also* 20 C.F.R. § 404.1527c(c)(3)(i)-(ii) (length of time a medical source treated plaintiff and frequency of plaintiff's visits may demonstrate that the medical source "has a longitudinal understanding" of the plaintiff's impairments) (effective March 27, 2017). However, the regulations also state that "[g]enerally, we give more weight to the medical opinion of a source who has examined you than to a medical opinion of a medical source who has not examined you." 20 C.F.R. § 404.1527(c)(1); *see also* 20 C.F.R. § 404.1527c(c)(3)(v) ("a medical source may have a better understanding of your impairment(s) if he or she examines you then if the medical source only reviews evidence in your folder") (effective March 27, 2017). Accordingly, while the limited relationship between a plaintiff and an examining physician may be a legitimate reason for favoring a treating physician's opinion over an examining physician's opinion, it is not a legitimate reason for favoring a reviewing physician's opinion over the examining physician's opinion – which is what the ALJ did in Plaintiff's case. (*See* AR 25) (giving great weight to the opinions of the state agency medical consultants who never examined Plaintiff).

The ALJ also asserts that Dr. Abejuela's opinion is entitled to less weight because he had the opportunity "to review only a limited amount of the other medical evidence of

record." (AR 25.) There is not substantial evidence in the record to support this assertion. Dr. Abejuela conducted his examination of Plaintiff on October 20, 2014, and he stated that he had reviewed Nurse Practitioner Mary Beare's June 16, 2014 treatment notes as well as "the rest of the medical evidence and background information." (AR 402.) There is no evidence in the record to indicate that the records Defendant provided Dr. Abejuela, and which Dr. Abejuela stated he had reviewed, were any less complete than the records that Defendant provided Dr. Robert Brill, the reviewing state agency psychologist, who issued his opinion a mere seven days after Dr. Abejuela and whose opinion the ALJ ostensibly credited over Dr. Abejuela's. (*Compare* AR 97 (Dr. Brill dated his opinion 10/27/2014) *with* AR 401 (Dr. Abejuela dated his opinion October 20, 2014).)

2. Inconsistency with Treating Source Records

The ALJ's second reason for discounting Dr. Abejuela's opinion is that it was inconsistent with Plaintiff's treatment records, which the ALJ found reflected far less restrictive limitations and indicated that Plaintiff had been stable on medications for years. The ALJ's findings, however, are not fully supported by substantial evidence in the record.

Plaintiff's treatment records from the Veteran's Administration ("VA") show that Dr. Tanya D. Scurry, a psychiatrist, treated Plaintiff through a combination of medication and talk therapy from November 2012 (*see* AR 275) until her departure from the VA in late May 2014 (*see* AR 260). On February 11, 2014, Dr. Scurry reported that Plaintiff felt the sertraline had been effective, his sleep was fair, his mood was "not too bad," his affect was "anxious," his insight and judgment were "erratic," and Plaintiff was working at a restaurant while also "training in RE/notary." (AR 376-77.) On March 14, 2014, Dr. Scurry reported that Plaintiff's appetite is good and his sleep is fair, his mood is "stressed a little more" and he seems "distracted," his insight and judgment were "erratic," "he'd like to cont. sertraline at current dose b/c he feels his stress is environmental and he plans to make changes to this

9

incl. returning to marital tx with his pastor." (AR 353-54.) On May 14, 2014, Dr. Scurry noted that Plaintiff's appetite and sleep are "fairly stable," his insight and judgment were "erratic," and he felt that the sertraline is "helping." (AR 329-30.) On May 25, 2014, Dr. Scurry reported that Plaintiff was "frustrated with working 2-3 jobs trying to keep food on the table, pay bills etc." (AR 321.) She continued to describe his insight and judgment as "erratic." (AR 321-22.)

In a separate undated letter concerning Plaintiff's request for benefits through the Veteran's Administration, which was written after Dr. Scurry's departure, Dr. Scurry wrote the following:

> [Plaintiff] carries a diagnosis of post-traumatic stress disorder (PTSD, chronic) and major depressive disorder, recurrent, moderate. His PTSD symptoms include irritability, insomnia, increased startle response, hypervigilance, nightmares, flashbacks, and emotional numbness/detachment. His depressive symptoms include low mood, erratic appetite, hopelessness, anhedonia, low motivation, poor focus/concentration, and short term memory loss. He has found it difficult to retain gainful employment since serving in the military due to the persistence of these symptoms. During the time that I provided care for [Plaintiff] I saw him every 2 weeks because, in my clinical opinion, the significance of his symptoms required this additional support. He also carried a diagnosis of substance abuse/dependence but this was a direct result of the PTSD and depressive symptoms (*i.e.*, a coping mechanism) and he was actively seeking addiction treatment in my clinic . . . As much as he has tried to function in society, care for his family, and seek/maintain employment, it's been a struggle for him.

(AR 788.)

Following Dr. Scurry's departure from the VA, Plaintiff saw Nurse Practitioner Mary Beare on June 26, 2014. (AR 316-320.) Nurse Beare acknowledged that Plaintiff was "new to [her]" (AR 316), however she went on to describe Plaintiff as "stable for years on the sertraline" (AR 320). She explained to Plaintiff that she does not do talk therapy, she only works with major mental illness, and her duties are limited to medication management. (AR 316.) According to Nurse Beare, Plaintiff denied any psychotic symptoms but "talked of some paranoid ideation but that can be connected to the [marijuana] use," reported some problems with sleep, and generally "wants to talk about wife . . . [not] about his own issues." (AR 316-17.) Nurse Beare described Plaintiff's insight as "good." (AR 317.) This is the only record reflecting any interaction between Nurse Beare and Plaintiff. (*See generally* AR 257-275.)

On July 29, 2014, one month after Plaintiff's appointment with Nurse Beare, Plaintiff saw John M. Byrne, DO, for a physical examination. (AR 305.) He reported to Dr. Byrne that the combination of sertraline and talking to Dr. Scurry had helped with his mental impairments, but Dr. Scurry had left. (AR 305.)

On January 15, 2015, Plaintiff saw Behavioral Health Nurse Practitioner Richard L. Bogard for medication management. (AR 776-77.) Dr. Bogard noted that rheumatology had recommended substituting Vanlafaxine for sertraline. (AR 777.) Dr. Bogard also reported that Plaintiff has had mild to moderate difficulty with anxiety and dysphoria. (AR 777.) Dr. Bogard conducted a mental status examination, which revealed that Plaintiff was experiencing a "sad mood," sleep disturbance, anhedonia, anergia, decreased concentration/memory, irritability, anxiety – including, worry, insomnia, tightness in chest, diaphoresis, feelings of doom, and obsessive thoughts, and PTSD symptoms – including nightmares, flashbacks, "hyperstartle/hypervigilance," and avoidance. (AR 779-80.) Dr. Bogard described Plaintiff's short and long-term memory as "intact" and his insight and

11

judgment as "fair." (AR 782.) He recommended increasing Plaintiff's dosage of sertraline and referred Plaintiff for a psychotherapy evaluation. (AR 782.)

On January 30, 2015, Plaintiff reported to Eula Langga-Sharifi, a rheumatologist, that he is going to the gym and exercising on a regular basis in addition to caring for his two year old son. (AR 774.) He complained of difficulty sleeping and wondered about Venlafaxine instead of sertraline for depression. (AR 774.)

On March 18, 2015, Plaintiff told Dr. Byrne that he was "still struggling" with his mood and "wants to go back to psychology." (AR 754.) The following day, March 19, 2015, Plaintiff told Lena M. Payne, a licensed clinical social worker ("LCSW"), that he would like to be assigned to a new psychiatrist because Dr. Scurry had left. (AR 656, 750.)

On April 29, 2015, Plaintiff was seen again by Nurse Bogard for sleep disruption, anxiety, and irritability. (AR 740-48.) Plaintiff reported moderate depression with sad mood, crying spells, sleep disturbance, anhedonia, anergia, and decreased concentration/memory. (AR 742.) Nurse Bogard indicated that Plaintiff had "moderate" mania and "moderate" anxiety" with mild to moderate PTSD, including nightmares, "hyperstartle/hypervigilance," and avoidance. (AR 743.) Nurse Bogard described Plaintiff's insight and judgment as "fair" and Plaintiff's short and long-term memory as "intact." (AR 745.)

On May 18, 2015, Dr. Chau L. Nguyen, a rheumatologist, noted that Plaintiff's sertraline dosage was increased but he continued to experience symptoms of PTSD. (AR 733.) Dr. Nguyen stated that Plaintiff may want to consider changing to Venlafaxine in the future. (AR 734.) On September 16, 2015, Dr. Byrne noted that Plaintiff "doesn't feel like sertraline is helping, wants to try venlafaxine." (AR 708.) On October 15, 2015, a treating note signed by Talha Khawar, MD, and Nasime Daoud, MD, indicated that Plaintiff was

12

advised to change his medications and was taken off the sertraline and placed on Venlafaxine, which Plaintiff stated "has been working well" although "he still has sx of PTSD." (AR 699-700.)

Based on the Court's review of the treating records, there is substantial evidence to support the ALJ's findings that Dr. Abejuela's assessment of limitations in Plaintiff's ability to understand, carry out, and remember simple instructions and perform daily activities are inconsistent with Plaintiff's treating notes, which generally do not reflect more than mild limitations in these areas. However, the treating notes, along with the assessment of Dr. Brill, the reviewing psychologist, support Dr. Abejuela's assessment of limitations on Plaintiff's ability to interact appropriately with coworkers and supervisors and work in coordination with others. (*See also* AR 95-96 (Dr. Brill's assessment of limitations on Plaintiff's ability to perform certain social interactions).)

Nevertheless, the ALJ discounted these limitations primarily in reliance on the treatment note written by Nurse Beare. Nurse Beare, who saw Plaintiff once and expressed her inability to treat Plaintiff beyond medication management, stated that, despite his complaints of paranoid ideation, Plaintiff had been "stable for years on the sertraline." (AR 320.) The ALJ cherry-picked this one comment from hundreds of pages of treating records, none of which support Nurse Beare's assessment and all of which were written by treating sources with either greater familiarity with Plaintiff or greater expertise in treating his impairments – or both. *See also Gutierrez.*, 740 F.3d at 522-23 (scintilla of evidence in the record is not "substantial evidence"); *Lingenfelter*, 504 F.3d at 1035 (court may not affirm "simply by isolating a specific quantum of supporting evidence"). Rather than reflecting stability, the treating notes indicate that, despite Plaintiff's compliance with his medication regime, Dr. Scurry routinely observed that Plaintiff's insight and judgment were "erratic," and multiple treating sources referred to Plaintiff's continued struggle with mood, symptoms of PTSD, anxiety, and hypervigilance. Further, within six months of Nurse Beare's

13

assessment, Plaintiff's treating sources discussed increasing his dosage of sertraline and/or switching him to a different medication, discussions that are at odds with Nurse Beare's suggestion that Plaintiff experienced long-term stability on sertraline.

Accordingly, the ALJ's decision to discount Dr. Abejuela's opinion in its entirety based on inconsistencies with Plaintiff's treating records, including his reported stability on sertraline, is not supported by substantial evidence in the record. To the contrary, the treating notes reflect that Plaintiff regularly struggles with, *inter alia*, his mood, symptoms of PTSD, anxiety, hypervigilance, irritability, and avoidance. These observations would appear to support, rather than contradict, Dr. Abejuela's assessment of limitations on Plaintiff's ability to interact appropriately with coworkers and supervisors and work in coordination with others. Notably, these are limitations that the reviewing psychologist, Dr. Brill, also assessed, but the ALJ did not include these limitations in either her assessment of Plaintiff's RFC or in a hypothetical to the VE.

### 3. Inconsistency with Function Report

Finally, the ALJ discounted Dr. Abejuela's opinion because it was inconsistent with Plaintiff's reported activities in his Adult Function Report. (AR 25.) Again, the ALJ's determination is not fully supported by substantial evidence in the record.

On September 14, 2014, Plaintiff completed an Adult Function Report in connection with his claim for benefits. (AR 195-203.) Plaintiff stated that his daily activities involved taking care of his 2 year old son – including changing diapers, feeding him, dressing him, and bathing him – watching TV, and running errands. (AR 196.) He stated that he does not spend time with others and the only place he goes on a regular basis, *i.e.*, once every two weeks, is the grocery store. (AR 198, 199.) He stated that he has problems getting along with family, friends, neighbors and others due to "mood swings and paranoia." (AR 200.)

He indicated that, before the onset of his impairments, he was very outgoing but is now very introverted. (AR 200.) He stated that he can pay attention for maybe 20 minutes at a time and has difficulty following instructions – "50/50 chance that I can follow spoken instructions." (AR 200.) He indicated that he is able to pay bills, count change, handle a savings account, and use a checkbook/money orders. (AR 198.) When asked how well he gets along with authority figures, Plaintiff responded, "I don't at all, part of my PTSD." (AR 201.) When asked if he had ever been fired or laid off from a job due to problems getting along with other people, he answered "Yes," and indicated that he had lost his job at Walmart for this reason. (AR 201.) Finally, Plaintiff stated that he does not handle stress or changes in routine well. (AR 201.)

The above statements are consistent with Dr. Abejuela's assessment that Plaintiff is severely impaired in his ability to, *inter alia*: respond to coworkers, supervisors, and the public; respond appropriately to usual work situations; and deal with changes in a routine work setting. (AR 406.) However, the ALJ did not assess any limitation on Plaintiff's ability to engage with coworkers or supervisors or to respond to changes in a work setting. (*See generally* AR 22.) The ALJ's decision to discount this portion of Dr. Abejuela's opinion based on purported inconsistencies with Plaintiff's statements in the Function Report is not supported by substantial evidence in the record.

4. Conclusion

In sum, the Court finds that the ALJ failed to articulate specific, legitimate reasons supported by substantial evidence in the record for discounting Dr. Abejuela's opinion that Plaintiff is severely limited in his ability to engage with coworkers or supervisors or to respond to changes in a work setting. The Court cannot say on this record that the ALJ's error was harmless because the VE was not presented with a hypothetical reflecting these limitations. The Court also cannot say that, if the ALJ credited these portions of Dr.

Abejuela's opinion, he would be required to find Plaintiff disabled on remand. *See Garrison*, 759 F.3d at 1020; *see also id.* n.26.

Accordingly, the matter must be remanded for further proceedings, and on remand the ALJ must either credit these portions of Dr. Abejuela's opinion or articulate specific and legitimate reasons supported by substantial evidence for discounting them. Because the ALJ erred with respect to Dr. Abejuela's opinion, the Court declines to reach the second issue in dispute: whether the ALJ properly considered the opinions, if any, expressed by Dr. Scurry in her undated letter regarding Plaintiff's request for veteran's benefits. However, on remand, the ALJ shall comply with the applicable case law and regulations governing consideration of treating physicians' opinions.

**RECOMMENDATION**

For the reasons stated above, IT IS ORDERED that the decision of the Commissioner is REVERSED, and this case is REMANDED for further proceedings consistent with this Memorandum Opinion and Order.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for plaintiff and for defendant.

LET JUDGMENT BE ENTERED ACCORDINGLY

DATED: August 28, 2017

_____
KAREN L. STEVENSON
UNITED STATES MAGISTRATE JUDGE